IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HOLLI BETH CLAUSER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23 C 3707** |
| **SUNRISE ABA, LLC,** | **Judge Harry D. Leinenweber** |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Holli Beth Clauser ("Clauser") brought claims of discrimination under the Americans with Disabilities Act ("ADA") 42 U.S.C.S. § 12101, *et seq.* against her former employer, Defendant Sunrise ABA, LLC ("Sunrise") for allegedly ignoring her requests for a reasonable accommodation and demoting her after dramatically increasing her duties and responsibilities. (Dkt. No. 1 ("Compl.").) Defendant moves to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. FED. R. CIV. P 12(b)(6). The Court DENIES Defendant's Motion to Dismiss (Dkt. No. 14 ("Mot.")) for the reasons stated herein.

## I.    BACKGROUND

Plaintiff's Complaint alleges the following facts. Sunrise is a California-based Applied Behavior Analysis ("ABA") therapy company that provides in-home, and community behavioral health services tailored to children diagnosed with autism. (Compl. ¶ 7.) Clauser began her employment with Sunrise in June 2022 in the role of Recruiting

Director. (*Id.* ¶ 15.) As Recruiting Director, Clauser was expected to build out and lead Sunrise's recruiting department. When she was hired, Clauser notified her boss, Brady Keith ("Keith") that she suffered from autism and communicated how the diagnosis affected her information processing and ability to handle stress. (*Id.*) Clauser's diagnosis is of Level 1 Autism which impacts how she processes new information, socializes, and handles stressful situations. (*Id.* ¶ 13.)

Keith persuaded Clauser to join Sunrise, and Clauser agreed to join in part because of Keith's promise of excellent health insurance starting on August 1, 2022. (*Id.* ¶ 16.) On July 6, 2022, Clauser expressed concerns to Keith about whether she would receive the health insurance on time, both for herself and for her children. (*Id.* ¶ 17.) Because Sunrise missed paperwork, Clauser did not receive access to the health insurance by August 1 as promised. Lacking access to her promised healthcare, Clauser experienced severe anxiety, which was exacerbated by her tapering off her anxiety medication – an update she communicated to Keith. (*Id.* ¶¶ 18-19.) Clauser did not explain her decision to go off her medication in her pleadings.

After being hired, Sunrise gave Clauser duties beyond those of a Recruiting Director, resulting in a heavy workload. (*Id.* ¶¶ 22-23.) On September 9, 2022, Clauser informed Keith that since going off her anxiety medication, she was susceptible to mood swings and that certain ADA accommodations would need to be made to help her manage her anxiety and workload. (*Id.* ¶ 24.) She stated that access to a Certified Career Coach specializing in autism would assist her in counseling with strategies to "address her communication deficits and to navigate employee relationships." (*Id.* ¶ 25.) Keith

- 2 -

"assured Clauser that Sunrise would take care of her but did not respond to Clauser's request for counseling." (*Id.*)

Also on September 9, 2022, Keith informed Clauser that "she was excelling" and promoted her to the position of VP of People Operations, which included a pay raise. (*Id.* ¶ 25.) Clauser requested Keith draft a written job description of the new role to enable a medical professional to fill out an accommodation form. (*Id.*) Keith did not provide such a description, but he did announce Clauser's promotion to the company on September 16, 2022. (*Id.* ¶ 26.) A few days later, on September 20, 2022, Clauser again informed Keith of her need for an accommodation for her autism and raised the need for periodic career counseling sessions. (*Id.* ¶ 27.) Keith responded that she did not need a job coach but that he would provide her with the necessary ADA accommodation forms. (*Id.*)

On September 22, Clauser introduced Keith to her proposed job coach, the cost of whom would range from $350 to $500 per month. Keith seemed "annoyed" by having to sit through the meeting. (*Id.* ¶ 28.) On September 29, Clauser suffered a severe panic attack for which she was hospitalized. After notifying Keith of this, he staffed her on an HR project. (*Id.* ¶ 29.) On October 4, Clauser again requested an accommodation from Sunrise, but the request was ignored. (*Id.* ¶ 30.)

On October 10, Keith informed Clauser that she was being demoted to her original position of Recruiting Director. (*Id.* ¶ 31.) Clauser was then locked out of the company's communication platforms, after which Clauser messaged Keith asking why she had been logged out, and requested again information about her accommodations, which Keith ignored. (*Id.* ¶¶ 31-32.) After Sunrise HR informed Clauser that she had been demoted

because Sunrise needed to "restructure and reassess job responsibilities," Clauser

responded that her accommodation requests had been ignored and requested

confirmation that Sunrise was terminating her. (*Id.* ¶ 34.) Sunrise HR responded:

> Your Sunrise account has in fact been paused, only to allow
> you the time off you have requested. Please let us know if you
> intend to come back as the Recruiting Director, if it is your
> preference, we can schedule a call to discuss your roles and
> responsibilities when you return.

(*Id.* ¶ 35.)

Clauser responded that she needed the accommodation form and asked HR to

"please send this new description along with the accommodation form" so that she could

"make a more educated decision on how to respond." (*Id.* ¶ 36.) Clauser followed up with

similar requests twice over the next few days. On October 12, Sunrise HR sent the

following message:

> Thank you for your emails, apologize for any delay in my
> response, I wanted to grant you the time off you requested
> without any interruptions. We are looking forward to
> speaking to you about the job requirements and our needs
> moving forward. Are you available to schedule a call for
> Friday morning? Look forward to hearing from you and
> appreciate your time.

(*Id.* ¶ 41.)

Clauser responded, in part:

> I have asked for accommodations and an updated job
> description. My time off I requested due to the mental stress
> caused by what I witnessed at Sunrise. Furthermore, you are
> now harassing and attacking my husband. You have chosen
> to target us after I expressed concerns about illegal behavior
> and misrepresentation to insurance companies. I will not be
> accepting a position with a company that engages in bullying
> behavior. I will also be reporting you to and the parties who
> engaged in the activities to the authorities. As an individual

> with Autism, I feel it is also my civil duty to protest my community. Please cease and detest [*sic*] all communication to me and about me. Employees have shared my name is being slandered and I respectfully ask that be rectified immediately.

(*Id.* ¶ 42.)

Plaintiff brought this Complaint alleging disability discrimination in violation of the ADA through failure to accommodate and through adverse employment action.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this evaluation, the court accepts all well-pleaded facts as true and draws reasonable inferences in the non-movant's favor. *Id.* The plaintiff's claim must be more than "merely speculative," but it need only allege "enough details about the subject matter of the case to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting *Brant*, 43 F.4th at 664, and *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

## III.    DISCUSSION

### A. Rule 10(b)

It is not disputed that Plaintiff exhausted her administrative remedies with the EEOC as is required. *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018). Rather, Defendant raises a series of objections with Plaintiff's Complaint, including first the

contention that the entire Complaint should be dismissed because of its failure to comport with Federal Rule of Civil Procedure 10(b).

Federal Rule of Civil Procedure 10 sets out the general format that pleadings must take, and paragraph (b) in particular sets forth certain requirements for separately numbered paragraphs and separate "counts" for each claim:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence — and each defense other than a denial — must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).

The Seventh Circuit has explained that the purpose of Rule 10(b), in conjunction with the general rules of pleading under Rule 8, is to "give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (citations omitted). Considering this purpose, courts should generally grant dismissal under Rule 10(b) only where the complaint is "so unintelligible that the defendant cannot reasonably be expected to be on notice of the plaintiff's claims." *See Berry v. Board of Trustees of University of Illinois*, 2024 WL 809092, at *3 (N.D. Ill. Feb. 27, 2024) (internal quotation marks and citations omitted).

Defendant takes issue with the Complaint's combination of multiple causes of action – failure to accommodate and disability discrimination – into a single count. The court in *Berry v. Board of Trustees* rejected a nearly identical argument. "The mere fact that those claims are combined in one count does not deprive [defendants] of fair notice

- 6 -

of [plaintiff's] claims when it is otherwise apparent on the face of the [] Complaint what causes of action [plaintiff] intends to bring." *Id.* at \*4. This Court finds Defendant's argument, as did the argument in *Berry*, "elevate[s] form over substance" by essentially requiring Plaintiff resubmit a virtually identical complaint except for pleading claims in separate counts. *Id.* at \*3. Defendant's Motion to Dismiss Plaintiff's Complaint under Rule 10(b) is denied.

### B. Qualified Individual

An employer may not "discriminate against a qualified individual on the basis of disability" under the ADA. 42 U.S.C. § 12112(a). To prevail on any ADA claim, Plaintiff needs to prove she is a "qualified individual" with a disability.

A "qualified individual" with a disability is a person who can (1) satisfy the requisite skill, experience, education, and other job-related requirements of the position; and (2) perform the essential functions of the position, with or without reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); *see also Brumfield v. City of Chi.*, 735 F.3d 619, 632 (7th Cir. 2013).

Defendants do not contest that Plaintiff suffers a disability – here, F84.0 Autism Spectrum Disorder, Level 1. (Compl. ¶ 13.) Rather, they dispute that Plaintiff is a "qualified individual," arguing that Plaintiff pled herself out of both the failure-to-accommodate and discrimination claims by including in her Complaint the statement that "Clauser could not sustain such job requirements absent accommodation for her autism." (*Id.* ¶ 23.) Because this is a binding "judicial admission" that she was not qualified for the

job absent an accommodation, she therefore fails to meet the criteria of a "qualified individual" within the meaning of the ADA. (Dkt. No. 19 ("Reply") at 3.)

The Court is not persuaded that the inclusion of this statement is a death knell for Plaintiff's entire Complaint.

First, the court examines a plaintiff's ability to work "as of the time of the adverse employment decision at issue." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). Plaintiff's statement that she "could not sustain such job requirements absent accommodation" were pled with regard to her role as Recruiting Director. This is notable because *after* she assumed this role, Defendant went on to inform Clauser "that she was excelling," and to *promote* Plaintiff to the position of VP of People Operations. (Compl. ¶ 25.) It is plausible that at the time of Defendant's adverse employment action – the alleged sidelining, ignoring of accommodation requests, and ultimate termination – Plaintiff was qualified, as evidenced by Keith's praise and Plaintiff's promotion, and could perform the essential functions of the position with or without a reasonable accommodation. Indeed, Plaintiff includes facts that detail her relevant 20 years of experience in the ABA industry and esteemed reputation among her colleagues. (*Id.* ¶¶ 9-10.) Further, Plaintiff does plead that she was a qualified individual in that she "with or without reasonable accommodation, can perform the essential functions of the positions she held." (*Id.* ¶ 48.)

Second, Defendant cites cases where courts have dismissed complaints for plaintiff's failure to plead adequately that (s)he was a qualified individual. However, in those cases, the dismissal was because of clear evidence that plaintiff *could not* or *would*

*not* have worked at all, with or without the accommodation. *See Weiler v. Household Finance Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) (plaintiff "conceded that she is no longer able to work for [employer] in any capacity" and plaintiff's psychotherapist stated she "could not return to work at [employer] in any position" after illness); *Cramer v. Florida*, 117 F.3d 1258, 1260, 1264 (11th Cir. 1997) (plaintiffs stated in complaint their inability to perform essential functions of their job due to "permanent, partial bodily impairment"). Here, Plaintiff not only could work, but was succeeding at work, as evidenced by her promotion.

Defendants argue also that Plaintiff failed to show she would have been qualified *with* the accommodation. Because Plaintiff alleged that what caused her need for an accommodation were her excessive workload and her decision to taper from her anxiety medication, the Certified Career Coach would not have assisted Plaintiff because the coach "would not have reduced [Plaintiff's] workload or been able to monitor her medications." (Mot. at 5.) This argument is myopic. Plaintiff sufficiently pled that a career coach would assist her with her anxiety by "periodically counsel[ing] her with strategies to address her communication deficits and to navigate employee relationships." (Compl. ¶ 24.) It is entirely plausible that a career coach who specializes in assisting people with autism navigate the workplace environment would ameliorate Plaintiff's anxiety. A reduction in anxiety and improved communication with colleagues could plausibly increase task efficiency and render Plaintiff better equipped to carry out her obligations.

Viewing these facts in the light most favorable to Plaintiff, it is plausible that Plaintiff was qualified both with and without the reasonable accommodation she

requested. As a result, Defendant's Motion to Dismiss the Complaint on grounds that Plaintiff is not a qualified individual is denied.

### C. **Failure to Accommodate**

Defendants raise several arguments for the first time on Reply that were not included in the original motion to dismiss, which amounts to a waiver of the arguments. *See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005) (a party waives arguments raised for the first time on reply). These arguments include that Plaintiff failed to state a claim for failure to accommodate because Plaintiff "refused to participate in the interactive process." (Reply at 6-8) ("Because Plaintiff did not respond to Sunrise's attempts to engage in the interactive process to discuss her needs, it is unknown what other accommodations, if any, could have been made and Plaintiff certainly does not plead otherwise.") Even if Defendant had properly raised this argument in its Motion to Dismiss briefing, this argument fails and is inappropriate at this stage of litigation.

To state a failure-to-accommodate claim, a plaintiff must allege that: (1) she was a qualified individual with a disability; (2) her employer was aware of her disability; and (3) the employer failed to accommodate reasonably her disability. *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020). The first two criteria have been satisfied, as described above. As for the third criteria, Plaintiff alleged that Defendant ignored her requests for her reasonable accommodation and failed to engage in the interactive process. Delay of providing an accommodation, as well as failure to engage in the interactive process, may suffice together as stating a failure-to-accommodate claim under

the ADA. *See Monroe v. Jewel Food Stores, Inc.*, 2023 WL 2018907, at *9 (N.D. Ill. Feb. 15, 2023) (citing *Rehling v. City of Chi.*, 207 F.3d 1009 (7th Cir. 2000)). Defendant cites cases to support the argument that a mere denial of the requested accommodation does not necessarily amount to a "denial" of the accommodation for purposes of the ADA. But the cases cited by Defendant were decided on Summary Judgment. (Reply at 6-7.) At the pleading stage, Clauser's allegations must be accepted as true, and any reasonable inferences must be drawn in Clauser's favor. Defendant's defenses about Plaintiff's failure to "participate in the interactive process," and that Sunrise's "reassignment" of Plaintiff constituted a reasonable accommodation, are thus not appropriately raised now.

Defendant argues also that a Certified Career Coach is not a reasonable accommodation because it would have posed an unduly high cost on Defendant. A reasonable accommodation is defined, in relevant part, as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(ii). Reasonable accommodations include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations[.]" 42 U.S.C. § 12111(9).

The Seventh Circuit recently held that "the inquiry for whether a job coach is a reasonable accommodation depends upon whether the job coach, instead of the disabled employee, performs the essential functions of the job." *EEOC v. Wal-Mart Stores, Inc.*, 38 F. 4th 651, 659 (7th Cir. 2022). First, it is not disputed or suggested that Plaintiff's

- 11 -

career coach would perform her job for her. Second, nowhere did the Court suggest that reasonability depended on the cost of the coach, or on whether the employer was paying for the coach. Defendant cites a misguided *Wal-Mart Stores* quote for the proposition that the Court punted on whether it was unreasonable per se for the employer to pay for a career coach accommodation. But in *Walmart*, the court punted not on the reasonableness of an employer paying, but on whether a reasonable accommodation might actually *require* the employer to pay. *Id*. at 658 ("But neither [employee] nor [plaintiff] asked for [defendant] to pay for [employee's] job coach. So we need not decide when, if ever, that would be required as a reasonable accommodation under the ADA").

At this stage, there is nothing to suggest that a specialist career coach – even one on the employer's dime – cannot constitute a reasonable accommodation under the ADA. Dismissal of the claim before discovery would run counter to the "fact-based case-by-case approach to ADA claims" that courts employ. *Walmart*, 38 F. 4th at 658. Plaintiff has satisfied her burden of pleading that Defendants failed to accommodate her request for a career coach, and Defendant's Motion to Dismiss the Complaint due to Plaintiff's shortcomings in her failure-to-accommodate claim is denied.

## D. **Disability Discrimination**

Defendant does not contest Plaintiff's disability discrimination claim and therefore waives any objection to it. Because Defendant, however, moved to dismiss the entire Complaint, the Court will briefly expand on why Plaintiff's adverse employment discrimination claim stands.

To state a disability discrimination claim under the ADA, a plaintiff must allege that: (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020).

An adverse employment action generally falls into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (citations omitted).

Clauser's Complaint satisfies the first two criteria of an ADA discrimination claim. As for the "adverse employment action," Plaintiff alleges that Sunrise demoted and terminated Clauser because of her disability. (Compl. ¶ 50.) In the alternative, Plaintiff alleges that if Clauser is deemed to have "resigned" from Sunrise with her response to Sunrise HR's email, "Clauser's working conditions were sufficiently egregious to give rise to a constructive discharge." (*Id.*) Sunrise's demotion of Clauser to her more subordinate position of Recruiting Director from VP of People Operations constitutes a "transfer or change in job duties." *Casino Queen*, 739 F.3d at 980. The Court finds it plausible based on the facts in the Complaint that Sunrise demoted Clauser because of the limitations her autism posed.

- 13 -

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion to Dismiss the Complaint is DENIED.


**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 5/8/2024